UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

PAUL MITCHELL,

                                        Plaintiff,

        vs.
                                                        9:04-CV-1490
CAPTAIN JAMES BELL, et al.,                             (J. Hurd)

                                        Defendants.

_____

APPEARANCES                             OF COUNSEL

PAUL MITCHELL
Plaintiff pro se

ELIOT SPITZER                           DAVID L. COCHRAN[1]
Attorney General of the                 Asst. Attorney General
State of New York
Attorney for Defendants

GUSTAVE J. DI BIANCO, United States Magistrate Judge

## REPORT-RECOMMENDATION

        This matter has been referred to me for Report and Recommendation by the

Honorable David N. Hurd, United States District Judge, pursuant to 28 U.S.C. §

636(b) and Local Rules N.D.N.Y. 72.3(c).

        In this civil rights complaint, plaintiff alleges that defendants retaliated against

him for the exercise of his constitutional right to file grievances and lawsuits; denied

him due process at disciplinary hearings; denied him access to courts; and subjected

---

[1] Assistant Attorney General David L. Cochran filed a notice of appearance in this action
on February 15, 2006, replacing Assistant Attorney General Kate H. Nepveu as defense counsel.
(Dkt. No. 33).

him to cruel and unusual punishment in violation of the First, Sixth, Eighth and Fourteenth Amendments. (Dkt. No. 1).

Plaintiff seeks declaratory, injunctive, and monetary relief. Presently before the court is defendants'[2] motion to dismiss some of plaintiff's claims pursuant to FED. R. CIV. P. 12(b)(6). (Dkt. No. 25). Plaintiff has responded in opposition to the motion. (Dkt. No. 26). For the following reasons, this court agrees with defendants and will recommend that their motion to dismiss part of the complaint be granted.

## DISCUSSION

### 1.    Motion to Dismiss

A court may not dismiss an action pursuant to Rule 12(b)(6) unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Cohen v. Koenig*, 25 F.3d 1168, 1172 (2d Cir. 1994)(citing *inter alia Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). The court must accept the material facts alleged in the complaint as true. *Id*. (citing *Cooper v. Pate*, 378 U.S. 546 (1964)(per curiam)).

In determining whether a complaint states a cause of action, great liberality is afforded to pro se litigants. *Platsky v. Central Intelligence Agency*, 953 F.2d 26, 28 (2d Cir. 1991)(citation omitted). For purposes of a Rule 12(b)(6) motion, the "complaint" includes any written instrument attached to the complaint and any statements or documents incorporated into it by reference. *Gant v. Wallingford Bd. of*

---

[2] The defendants' motion to dismiss was filed on behalf of all defendants except defendant C.O. Wilt who has not been served. *See* Dkt. No. 31.

*Education*, 69 F.3d 669, 674 (2d Cir. 1995)(citations omitted).

## 2.   **Facts**

Plaintiff's amended complaint covers events from two distinct time periods at two different correctional facilities.  Plaintiff first claims that in April of 2000, defendant Kissane issued a false misbehavior report against plaintiff for destruction of state property and possession of "contraband" and then testified falsely at his disciplinary hearing. Compl. at ¶¶ 12, 20.  Plaintiff also alleges that defendant Bell, who presided over the April 2000 disciplinary hearing, improperly denied one of plaintiff's requests for witnesses and then found plaintiff guilty based on insufficient evidence. Compl. ¶¶ 22, 26.  Plaintiff states that the disciplinary determination was reversed in November 2001, after plaintiff had filed an Article 78 proceeding in New York State court.[3] Compl. ¶¶ 31-32.

The rest of the amended complaint deals with incidents occurring in 2004. Plaintiff alleges that on July 27, 2004, defendant Perrea issued a misbehavior report against plaintiff, after plaintiff told defendant Perrea that plaintiff was going to file a lawsuit against her. Compl. ¶ 34.  Plaintiff alleges that he was afforded a disciplinary hearing, beginning August 5, 2004 and was denied adequate assistance by defendant Ano in preparation for that disciplinary hearing. Compl. ¶¶ 35-38.  Plaintiff also alleges that the hearing officer at the 2004 hearing, defendant Uhler, refused to

---

[3] It appears from the complaint that although plaintiff filed an Article 78 proceeding, the April 2000 disciplinary hearing determination was reversed by a Deputy Superintendent from Collins Correctional Facility after conferring with an Assistant Attorney General, and without a court ruling. Compl. ¶¶ 31-32.

provide proper assistance to plaintiff; denied plaintiff his "right to present testimony;" denied him his right to call witnesses; and was rude and unprofessional at the hearing. Compl. ¶¶ 39-47.

Plaintiff also claims defendant Perrea's actions in issuing a misbehavior report solely because plaintiff told her that he was going to file a lawsuit against her constituted retaliation for plaintiff's exercise of his right to access to courts. Compl. ¶ 48. Plaintiff also makes this retaliation claim against defendant Uhler because plaintiff claims that defendant Uhler's actions at the 2004 disciplinary hearing were in retaliation for plaintiff's prior lawsuit against defendant Uhler. Compl. ¶ 48-49. Plaintiff states that defendant Uhler was aware that he was a defendant in plaintiff's prior lawsuit and, therefore, any adverse actions he took during that 2004 disciplinary hearing were in retaliation for that lawsuit. Compl. ¶¶ 50-51.

Plaintiff alleges that defendant Uhler found plaintiff guilty, and sentenced plaintiff to six months in the Special Housing Unit (SHU), but that this determination was later reversed due to procedural error. Compl. ¶¶ 46, 53. Plaintiff states that when he filed a grievance against defendant Uhler regarding his actions at the disciplinary hearing, defendant Bell was assigned to investigate the grievance, but that defendant Bell completely disregarded evidence "clearly" documenting the violation of plaintiff's rights. Compl. ¶¶ 54-57. Plaintiff alleges that defendant Jarvis "prevented" service of a summons and complaint against defendant Bell in another federal court action filed by plaintiff. Compl. ¶¶ 59-61.

Plaintiff also complains about an August 5, 2004 disciplinary hearing against

4

him, conducted by defendant Ransom. Compl. ¶¶ 62-66, Plaintiff's Ex. F.  Plaintiff claims that defendant Ransom denied plaintiff the right to call witnesses; and "prepared" the videotape for plaintiff's hearing "without sound", allegedly because the audio portion of the videotape would have shown that plaintiff was not guilty of the misbehavior. Compl. ¶¶ 63-64.  Plaintiff states that on August 11, 2004, he was found guilty of the misbehavior and sentenced to sixty days SHU, together with loss of certain privileges. Compl. ¶ 65.  Plaintiff claims that Superintendent Artus reversed the disciplinary determination on August 12, 2004. Compl. ¶ 68.

Plaintiff claims that on August 19, 2004, defendants LaClair and Wilt were working in the SHU and one of them spit chewing tobacco on plaintiff's account statement. Compl. ¶ 71.  Plaintiff states that on August 19, 2004, defendant LaClair intentionally placed another inmate's cell number on a magazine that was addressed to plaintiff. Compl. ¶ 72.  Plaintiff claims that defendants LaClair and Ano told other staff members about plaintiff's lawsuits in order to "retaliate" against plaintiff for filing those actions. Compl. ¶¶ 73-75.

Plaintiff also claims that on September 10, 2004, another inmate from plaintiff's unit went to the hospital and was confronted by defendant Duquette, who told the inmate that since Duquette left SHU, "people want to sue him." Compl. ¶ 76.  Duquette then allegedly stated that he had "a long reach."  Plaintiff claims that since he was the only inmate in SHU that had sued defendant Duquette, the comment must have been meant for plaintiff. *Id.*  Plaintiff states that on September 16, 2004, defendant Lucia spoke with plaintiff about a grievance he had filed and attempted to

have plaintiff sign a document indicating that the grievance had been resolved. Compl. ¶¶ 77-78.  Plaintiff claims that when he refused to sign the document, defendant Lucia began to berate plaintiff and told him that he was filing frivolous grievances.  Plaintiff states that when he told defendant Lucia that plaintiff was entitled to a hearing, defendant Lucia told plaintiff that he would not "like the response." Compl. ¶ 79. Plaintiff claims that he was then denied "the" videotape to document his claims. Compl. ¶ 80.

Finally, plaintiff claims that on August 5, 2004, defendant Champagne attempted to interfere with plaintiff's legal mail by refusing to staple plaintiff's legal briefs. Compl. ¶¶ 81-82.  Plaintiff claims that defendant Champagne "simply dropped the legal letter and the disbursement form in the mailbox without attaching them. Compl. ¶ 83. Plaintiff states that later the disbursement form was returned to him because there was "'nothing attached.'" Compl. ¶ 83.  Plaintiff claims that these actions "delayed" plaintiff's compliance with a court order in a federal lawsuit. Compl. ¶ 84.  Plaintiff states that he attempted to file a grievance about this incident, but that "an unknown" officer removed the grievance complaint from the mailbox, "and it was not filed until September 16, 2004." Compl. ¶ 85.

## 3.    <u>Statute of Limitations</u>

Federal courts borrow the state law personal injury statute of limitations period for purposes of filing section 1983 actions. *Wilson v. Garcia*, 471 U.S. 261, 276 (1985).  In New York State, the relevant limitations period is three years. *Owens v. Okure*, 488 U.S. 235, 250-51 (1989). *See* N.Y. Civ. Prac. L & R. § 214(5).  Thus,

unless the limitations period is tolled for some reason, a plaintiff must file his section 1983 civil rights action within three years of the accrual of each cause of action.

Federal law, however, governs the question of when a section 1983 claim accrues. *Covington v. City of New York*, 171 F.3d 117, 121 (2d Cir. 1999)(citing *Morse v. University of Vermont*, 973 F.2d 122, 125 (2d Cir. 1992)), *cert. denied*, 120 S. Ct. 363 (1999).  Generally, under federal law, a cause of action accrues when "the plaintiff knows or has reason to know of the injury which is the basis of his action." *Id.* (quoting *Singleton v. City of New York*, 632 F.2d 185, 191 (2d Cir. 1980)(internal quotation marks omitted)).

In this case defendants argue that the claims relating to plaintiff's April 2000 misbehavior report are time barred. Defendants' Memorandum of Law at 5.  Plaintiff alleges that in April of 2000, defendant Kissane issued a false misbehavior report and then lied at the disciplinary hearing.  The first question that the court must answer is when plaintiff's cause of action accrued.  Plaintiff would have known that the misbehavior report was false when he received it, and he would have known of defendant Kissane's allegedly false testimony at the time of the disciplinary hearing.[4]

Plaintiff filed this action on December 27, 2004. (Dkt. No. 1)  Giving plaintiff the benefit of the "mailbox" rule, plaintiff would be deemed to have filed this action when he gave his original complaint to prison officials for mailing. *See Houston v.*

---

[4] The court would point out, without making any findings on the issue, that a false misbehavior report in itself, does not rise to the level of a constitutional violation. *Freeman v. Rideout*, 808 F.2d 949, 953 (2d Cir. 1986), *cert. denied*, 485 U.S. 982 (1988).  However, to the extent that plaintiff alleges the false misbehavior report to be a constitutional violation, he would have known about its falsity at the time that it was issued to him.

*Lack*, 487 U.S. 266, 273 (1988)(A *pro se* inmate's papers are deemed filed when the inmate gives the papers to prison officials for mailing).  Since the exact date of mailing in this case is not known, the court looks to the date that plaintiff signed his original complaint.

Unfortunately in this case, plaintiff did not place a date on his original complaint. Compl. at p.14.  Plaintiff's *in forma pauperis* application was signed on November 17, 2004. (Dkt. No. 2).  There is no date required on the Inmate Authorization Form. (Dkt. No. 3).  Thus, the earliest that plaintiff could have given his complaint to the prison personnel for mailing would have been November 17, 2004. Because plaintiff is pro se, the court will give him the benefit of this earlier date.

Having decided that the date of "filing" could be considered, November 17, 2004.  Three years prior to November 17, 2004 would be November 17, 2001. Plaintiff's claim would have to have accrued after November 17, 2001.  The court must now determine when plaintiff's cause of action accrued.  Although plaintiff does not specify a date when the April 2000 hearing took place, the  court will give plaintiff the benefit of the doubt and assume that the hearing could have occurred as late as April 30, 2000.  Since plaintiff alleges that defendant Kissane filed a false misbehavior report and then lied at the hearing to support the false report, the ***latest*** that plaintiff would have been aware that he had a claim, (if his allegations rise to the level of a constitutional violation at all), would have been the date of the hearing at which defendant Kissane allegedly lied about the misbehavior.

Because it appears that plaintiff's claim accrued at the latest on April 30, 2000,

8

plaintiff's claims against defendants Kissane and Bell are time-barred insofar as he alleges constitutional violations as a result of the April 2000 disciplinary hearing.  The fact that plaintiff's April, 2000 disciplinary determination was not reversed until November 21, 2001 does not change this court's decision.  The Second Circuit has held that the only time that a cause of action accrues at the ***reversal*** of the disciplinary determination is if the length of plaintiff's confinement was affected by the disciplinary determination. *Jenkins v. Haubert*, 179 F.3d 19, 28 (2d Cir. 1999) (specifically distinguishing *Black v. Coughlin*, 76 F.3d 72 (2d Cir. 1996) which could have been read to require reversal of the hearing prior to accrual of the claim).

Thus, it is clear in this case that whatever claim plaintiff might have had regarding that April, 2000 disciplinary hearing, it accrued at the time of the hearing. Any claims relating to that hearing are time-barred unless the doctrine of "equitable tolling" allows the court to extend plaintiff's time to file his claims from April of 2000.  The doctrine of equitable tolling allows the court to extend the statute of limitations past the time of expiration as necessary to avoid inequitable circumstances. *Johnson v. Nyack Hospital*, 86 F.3d 8, 12 (2d Cir. 1996)(citation omitted).  Equitable tolling principles have applied when plaintiff "actively" pursued his judicial remedies, but filed a defective pleading within the appropriate time period. *Brown v. Parkchester S. Condominiums*, 287 F3d 58, 60 (2d Cir. 2002)(citations omitted). Equitable tolling has also been applied where plaintiff was prevented in some "extraordinary" way from asserting his rights, or where he asserted his rights in the wrong forum. *Johnson*, 86 F.3d at 12.  In determining whether equitable tolling

9

applies, the court must find that plaintiff acted reasonably diligently throughout the period that he seeks to toll. *Id.*

In this case there does not appear to be any reason to afford plaintiff equitable tolling. The court's data shows that plaintiff has filed seven actions in the Northern District of New York since March of 2001. Two of these cases were filed in 2001. *See Mitchell v. Selsky*, 01-CV-358 (filed March 12, 2001); *Mitchell v. Senkowski*, 01-CV-570 (filed April 19, 2001). Since plaintiff filed two other lawsuits in 2001, plaintiff was clearly not prevented from asserting his rights during the statute of limitations period for his April, 2000 claims. *Jenkins v. Haubert* was decided in 1999, so the law was clear in 2000 that plaintiff did not have to wait until his disciplinary hearing was reversed in order to bring a due process claim regarding his disciplinary hearing.

Plaintiff has not shown any other reason why he could not have filed a prior lawsuit or included this claim in one of the two lawsuits that he filed in 2001. Thus, this court finds that equitable tolling does not apply, and any claims relating to the April 2000 disciplinary hearing may be dismissed based on the statute of limitations. Since defendant Kissane is only named in conjunction with the time-barred claim, he may be dismissed as a defendant from this lawsuit. Defendant Bell has been included in a later claim, and therefore, may remain as a defendant.

## 4.   Access to Courts

In *Bounds v. Smith*, 430 U.S. 817 (1977), the Supreme Court held that access to the courts is a fundamental right that requires prison authorities to "assist inmates in

the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law."  The Supreme Court has also held that an inmate alleging a denial of access to courts must show ***actual injury*** as a result of the deficient access to courts. *Lewis v. Casey*, 518 U.S. 343 (1996).  The ***cause of the injury*** must be inadequacy of the access.  *Id.* at 351.  Plaintiff must show that a non-frivolous legal claim was frustrated or impeded due to the actions of prison officials. *Warburton v. Underwood*, 2 F. Supp. 2d 306, 312 (W.D.N.Y. 1998)(quoting *Lewis v. Casey*, 518 U.S. at 353).

In this case, the only claim made against defendant Jarvis is that she knew that James Bell was a Lieutenant at Upstate, but that she "prevented" service of a summons and complaint against Bell in *Mitchell v. Senkowski*, 03-CV-1209 (NDNY). Compl. ¶¶ 59-61.  Plaintiff claims that defendant Jarvis, who was the Inmate Records Coordinator at Clinton Correctional Facility prevented service of the summons and complaint on defendant Bell by sending a letter to the Marshal's Service, stating that there was no Lieutenant James Bell at "this facility."

Plaintiff has attached this letter, dated July 6, 2004, as Exhibit E to his complaint.  In the section of his complaint entitled "Legal Claims," plaintiff does not specify exactly which defendant is being sued for a particular alleged violation, however, it appears that defendant Jarvis is being sued under paragraph 91 for violations of the Sixth, Eighth, and Fourteenth Amendments because that paragraph states that "defendants" prevented him from filing grievances and "hinder[ed] service of lawsuits." Compl. ¶ 91.

11

This court finds, however, that plaintiff has not alleged the requisite actual injury to state a claim against defendant Jarvis for denial of access to courts and certainly not for cruel and unusual punishment under the Eighth and Fourteenth Amendments.  The court notes that a review of the docket sheet of *Mitchell v. Senkowski*, 03-CV-1209 shows that on June 28, 2004, plaintiff wrote a letter, filed with the court on July 1, 2004, requesting voluntary withdrawal of the case. (Dkt. No 13)(03-CV-1209).  The letter by defendant Jarvis was signed on July 4, 2004. (Dkt. No. 25).  Defendant Jarvis's letter contained the names of other defendants for whom service was not being accepted for various reasons, and was filed on July 15, 2004, with the Marshal's notice that the summons was being returned unexecuted. (Dkt. No. 25).

The Honorable District Judge Lawrence E. Kahn ordered dismissal of 03-CV-1209 on July 20, 2004 pursuant to plaintiff's June 28, 2004 letter. (Dkt. No. 26).  Thus, even if defendant Jarvis improperly failed returned the papers to the Marshal, plaintiff had already requested dismissal of the action, and there is no ***actual injury*** that resulted because of defendant Jarvis's actions.

In his response to defendants' motion for partial summary judgment in this case, plaintiff alleges that he attempted to reopen 03-CV-1209.  A review of the docket sheet shows that plaintiff wrote a letter to the court, dated August 2, 2004, requesting to reopen the case only because the defendants were served after his letter of voluntary dismissal.  This letter was ***rejected*** by the Honorable Magistrate Judge David E. Peebles on August 6, 2004, and plaintiff was informed by Magistrate Judge Peebles

12

that if plaintiff wished to reopen the case, he would have to make a motion. (Dkt. No. 27).  No motion was ever filed by plaintiff.  In any event, the actual injury would have to be the result of defendant Jarvis's action, and defendant Jarvis's actions would have had to be the cause of plaintiff's denial of access.  Plaintiff in this case was ***not*** denied access to courts.  He asked to withdraw the action himself, and when given the opportunity to move to reopen the action, he did not do so.  Thus, this court must recommend dismissal of this entire complaint as against defendant Jarvis.

Plaintiff also alleges that on August 5, 2004, defendant Champagne was picking up the mail, and plaintiff handed defendant Champagne a legal letter, together with a disbursement form and thirteen legal briefs to be stapled.  Plaintiff states that defendant Champagne refused to get a stapler and then "simply dropped the legal letter and the disbursement form in the mailbox without attaching them." Compl. ¶ 83.  Plaintiff claims that the disbursement form was sent back to plaintiff because there was nothing attached to it. *Id.*  Plaintiff then states that defendant Champagne's actions ***also*** delayed plaintiff's compliance with a court order in *Mitchell v. Goord*, 04-CV-366.

Plaintiff has not indicated how defendant Champagne's refusal to staple plaintiff's documents delayed plaintiff's compliance with a court order.  A review of the docket sheet in *Mitchell v. Goord* shows that plaintiff suffered absolutely ***no prejudice*** from any alleged delay in compliance.  In fact, *Mitchell v. Goord* is currently pending in the Northern District of New York.  Defendants in that case have filed a motion for summary judgment which is awaiting a decision by the court.  Thus,

13

even if defendant Champagne did refuse to staple plaintiff's documents and caused a disbursement form to be returned to plaintiff, plaintiff has neither alleged nor shown any actual injury sufficient to state a claim for denial of access to courts by defendant Champagne.  Because this is the only complaint against defendant Champagne, he may be dismissed as a defendant from this action.

Plaintiff also alleges that an unknown individual interfered with a grievance that plaintiff was going to file against defendant Champagne. Compl. ¶ 85.  Filing a grievance is a constitutionally protected activity. *Auletta v. LaFrance*, 233 F. Supp. 2d 396, 401-02 (N.D.N.Y. 2002)(citations omitted).  Plaintiff alleges only that he had to re-submit the grievance, and that its filing was delayed. *Id.*  Plaintiff alleges only delay in filing of the grievance, and thus, no actual injury as the result of the unknown officer's[5] alleged actions.[6]  All of plaintiff's access to courts claims may be dismissed.

## 5.   **Retaliation**

In order to establish a claim of retaliation for the exercise of a constitutional right, plaintiff must show first, that he engaged in constitutionally protected conduct, and second, that the protected conduct was a substantial motivating factor for adverse action taken against him by defendants. *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003)(citing *Gayle v. Gonyea*, 313 F.3d 677 (2d Cir. 2002); *Hendricks v. Coughlin*,

---

[5] In any event, the court notes that plaintiff has never identified the John Doe officer.  Without a specific defendant to sue, plaintiff would not have been able to sustain this claim in any event.

[6] To the extent that this claim may be read as one for "retaliation" for the exercise of plaintiff's right to use the grievance system, the claim will be analyzed in the section of this recommendation discussing retaliation.

114 F.3d 390 (2d Cir. 1997)).  There must be a causal connection between the

protected conduct and the adverse action. *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir.

2003).  The "adverse" action must be conduct "that would deter a similarly situated

individual of ordinary firmness from exercising his or her constitutional rights." *Id.* at

353.  The court must keep in mind that claims of retaliation are "easily fabricated" and

thus, plaintiff must set forth non-conclusory allegations. *Id.* (citing *Dawes v. Walker*,

239 F.3d 489, 491 (2d Cir. 2001), *overruled on other grounds*, *Swierkiewicz v.

Sorema, N.A.*, 534 U.S. 506 (2002)).[7]

In this case, plaintiff makes claims of retaliation against various defendants.

There is one claim of retaliation that is related to plaintiff's August 5, 2004

disciplinary hearing.  Plaintiff alleges that he told defendant Perrea that plaintiff was

going to file a law suit against her, and she issued a misbehavior report against him

for, *inter alia*, "threatening" her. Compl. ¶ 34 & Ex. A.  Plaintiff alleges that defendant

Uhler presided over the disciplinary hearing and found plaintiff guilty of "threats."

Plaintiff claims that by doing so, both defendant Uhler and defendant Perrea were

retaliating against plaintiff for the exercise of his right to file a lawsuit. Compl. ¶ 48.

Plaintiff also claims that at the time of his hearing, he had already filed suit against

defendant Uhler, and Uhler was aware of the suit because he had already been served

with process. Compl. ¶ 49-50.  Plaintiff claims that because of these facts, "it was

---

[7] The court would note that *Dawes* did not create a "heightened pleading standard", and to the extent that it did create such a standard, the Second Circuit held that *Dawes* was inconsistent with *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506 (2002). *See Phelps v. Capnolas*, 308 F.3d 180, 187 (2d Cir. 2002).

obvious" that defendant Uhler was retaliating against plaintiff. Compl. ¶ 51.

Defendants are not moving for dismissal based on the claim of retaliation relating to the August 5, 2004 disciplinary hearing, thus, this court makes no findings regarding that claim.  Defendants allege that there are other allegations of retaliation that do not state a claim for relief, and this court will consider those allegations.

Plaintiff alleges that on August 9, 2004 either defendant LaClair or defendant Wilt spit chewing tobacco on plaintiff's account statement and left it at plaintiff's cell. Compl. ¶ 71.  In his response to defendants' motion to dismiss, plaintiff now alleges that it was defendant Wilt who spit chewing tobacco on the account statement. (Dkt. No. 26 at 6).  Plaintiff also alleges that on August 19, 2004, defendant LaClair "intentionally" marked a magazine that was supposed to be delivered to plaintiff with the incorrect cell number, causing the magazine to be delivered to another inmate. Compl. ¶ 72.

Plaintiff alleges that some of the defendants discussed being sued by plaintiff with other corrections officers. Compl. ¶¶ 73-75.  Defendant Ano allegedly told other officers working in the Special Housing Unit (SHU) that he was a defendant in one of plaintiff's lawsuits. Compl. ¶ 73.  Plaintiff states that defendant Ano lied and told some of the other officers that they were defendants in plaintiff's action, although none of them were. *Id.*  Plaintiff also claims that on September 4, 2004, defendant LaClair told all the officers in SHU about being a defendant in one of plaintiff's lawsuits. Compl. ¶ 74.  Then plaintiff concludes that "the ***only reason***" that these defendants would have for mentioning plaintiff's lawsuits to other officers is to

16

"retaliate" against plaintiff for filing those lawsuits. Compl. ¶ 75 (emphasis added).

Plaintiff alleges that on September 10, 2004, another inmate was confronted by defendant Duquette, who apparently told this "other inmate" that since Duquette left SHU, "people" wanted to sue him, and that Duquette "had a long reach." Compl. ¶ 76. Plaintiff then concludes that because plaintiff was the "only person" who filed any litigation against Duquette, then Duquette must have been referring to plaintiff.

Plaintiff also alleges that on September 16, 2004, defendant Lucia "yelled" at plaintiff because he refused to sign a document indicating that a grievance had been resolved. Compl. ¶¶ 77-79.  Plaintiff claims that defendant Lucia told plaintiff that he was not cooperating with the IGRC (Inmate Grievance Resolution Committee) and that plaintiff was filing frivolous grievances. Compl. ¶ 79.  Plaintiff states that he told defendant Lucia that it was plaintiff's right to file grievances, and defendant Lucia told plaintiff that he would not "like the response." *Id.*

None of these actions by defendants rise to the level of allegations of retaliation as they are written.  Even if one of the defendants spit chewing tobacco on plaintiff's account statement, this would not rise to the level of an adverse action that would deter an individual of ordinary firmness from asserting his rights.  Additionally, the fact that another inmate received plaintiff's magazine before he did does not even approach a claim of retaliation.  Plaintiff appears to have been given his magazine, since he made a copy of the magazine's front and back covers to submit as an exhibit.[8]

---

[8] In his response to defendants' motion to dismiss, plaintiff claims that the inmate in the cell in which the magazine was initially placed had some serious mental problems and that this inmate ripped off the cover of the magazine and threw it down the tier toward plaintiff's cell. (Dkt. No. 26 at

Plaintiff's Ex. I.  Thus, the retaliation claims may be dismissed as against defendants LaClair and Wilt[9] may be dismissed.

The fact that defendants discussed plaintiff's lawsuits with each other certainly does not constitute retaliation.  Plaintiff does not claim any adverse action as a result of these alleged discussions.  Plaintiff's statement that the ***only*** reason that these defendants could have discussed the lawsuits was to retaliate against him for filing the actions is ***completely conclusory***.  Since plaintiff is claiming no adverse consequences

---

8).  Plaintiff then claims that when he told defendant LaClair that the magazine had been delivered to the wrong cell, defendant LaClair stated that plaintiff should "stop playing games" with his complaints or plaintiff would "never get [his] ... mail."  *Id.*  None of this information was contained in the original complaint.

The court first notes that if the other inmate had ripped the front cover off of the magazine, he must have done so very carefully, since the copy that was submitted by plaintiff as Exhibit I appears in amazingly good condition for having been torn off the magazine and thrown down the tier.  There are no ragged edges on either copy.  Additionally, plaintiff has submitted what appears to be the back cover of the magazine as well.  He does not indicate how he obtained either of these pages of the magazine without have been given the entire magazine.  Regardless of these facts, however, defendant LaClair's verbal threats do not amount to a constitutional violation.  *See Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986); *Ramirez v. Holmes*, 921 F. Supp. 204, 210 (S.D.N.Y. 1996)(threats or verbal harassment without injury, "although indefensible and unprofessional," do not rise to the level of constitutional violations).

[9] The court recognizes that defendant Wilt has not been served. (Dkt. No. 31).  The Federal Rules require that a defendant be served within 120 days of filing the complaint. FED. R. CIV. P. 4(m).  The failure to serve a defendant within 120 days of filing the complaint may be a ground for dismissal of the complaint unless good cause is shown for an extension of that time. *Id.*  It is true that a pro se, in forma pauperis plaintiff may rely upon the Marshal to properly serve the summons and complaint. *Romandette v. Weetabix*, 807 F.2d 309, 311 (2d Cir. 1986).

In this case, the reasons stated for the failure to serve defendant Wilt was that there was no individual by that name at Clinton Correctional Facility. (Dkt. No. 31 at 2).  Plaintiff has made no other attempt to properly identify this defendant so that the Marshal may serve the complaint.  Generally, the court would afford plaintiff the opportunity to show good cause why the time for service should be extended, however, in this case, the court finds that plaintiff has not stated a claim against defendant Wilt, and since the court is recommending dismissal without prejudice as to other defendants, the court will recommend dismissal without prejudice as to defendant Wilt.  However, if plaintiff wishes to substantively amend his complaint to state a claim against this defendant, he will also have to properly identify and request the Marshal to serve him.

to himself as a result of these alleged discussions, he does not state a claim against defendants Ano or LaClair for retaliation.

The fact that defendant Duquette might have told another inmate that he was being sued and that he "had a long reach" does not state a claim for retaliation. Plaintiff states absolutely no adverse action to him as a result of this alleged comment to another individual.  In plaintiff's response to defendants' motion to dismiss, he claims that the inmate to which defendant Duquette told this information was an enemy of plaintiff's, and that plaintiff is currently being protected from this inmate for a previous assault. (Dkt. No. 26 at 10).  It is unclear how information regarding a lawsuit against defendant Duquette, and a statement that defendant Duquette "had a long reach" would create a problem between two inmates.  Plaintiff himself states that defendant Duquette was referring to plaintiff when Duquette made that statement.

Finally, plaintiff's claim that defendant Lucia "yelled" at him and told him that he would not like the response if he filed frivolous grievances also does not rise to the level of a claim of retaliation.  Although in his response to the motion to dismiss, plaintiff states that Lucia's actions "did cause a partially unfavorable" decision on one of plaintiff's grievances[10], plaintiff does not state this in the original complaint, nor does he state any specific facts regarding this alleged "partially unfavorable decision" in the response papers.  Plaintiff does not allege any adverse action as the result of this alleged verbal altercation with defendant Lucia or as the result of defendant Duquette's alleged statements to another inmate. Thus, this part of plaintiff's

---

[10] (Dkt. No. 26 at 11).

retaliation claim may be dismissed.

The court also notes that the claim against the unknown officer discussed in the access to courts section could also be interpreted as a claim for retaliation. Plaintiff could be attempting to argue that the unknown officer's actions in removing the grievance against defendant Champagne from the mailbox was in retaliation for the attempt to file a grievance. However, plaintiff has not sufficiently alleged an adverse action. As stated above, plaintiff only alleges that he had to resubmit the grievance, and it appears that there were no other adverse consequences resulting from the delay. Thus, to the extent that plaintiff's claim against the unknown officer can be read as a retaliation claim, it may be dismissed.

## 6.   <u>Investigation of Grievances</u>

Although it is unclear, it appears that plaintiff may be making a claim that defendant Bell failed to properly investigate a grievance that plaintiff filed against defendant Uhler in conjunction with the August 5, 2004 disciplinary hearing. Compl. ¶¶ 54-58. Defendants have **not** moved to dismiss on this issue. Thus, the court will only comment briefly on the issue to the extent that plaintiff is alleging that defendant Bell improperly investigated a grievance, but will not recommend dismissal at this time.

Courts have consistently held that because grievances procedures are undertaken voluntarily by the New York and other states, they are **not constitutionally required**. *See Ramos v. Hanslmaier*, 96 Civ. 744, 1997 U.S. Dist. LEXIS 6082, *6-7 (S.D.N.Y. Feb. 19, 1997)(multiple citations omitted). *See also Bullock v. Horn,* CV-

20

99-1402, 2000 U.S. Dist. LEXIS 21573, *22-23 (M.D. Pa. 2000)(plaintiff claimed improper refusal to process grievance); *Hoover v. Watson*, 886 F. Supp. 410, 418-19 (D. Del.), *aff'd*, 74 F.3d 1226 (3d Cir. 1995); *Muhammad v. McMickens*, 86 Civ. 7376, 1988 U.S. Dist. LEXIS 552, *8-9 (S.D.N.Y. Jan. 25, 1988).  Because the grievance procedures are not constitutionally required, a defendant's violation of those procedures or the state's failure to enforce those procedures does not give rise to a claim under section 1983. *Id.*

Thus, while the filing of grievances is protected, the manner in which a grievance is investigated is ***not constitutionally protected***. *Odom v. Poirier*, 99 Civ. 4933, 2004 U.S. Dist. LEXIS 25059, *37-38 (S.D.N.Y. Dec. 10, 2004)(citing *inter alia Torres v. Mazzuca*, 246 F. Supp. 2d 334, 342 (S.D.N.Y. 2003)).  The extent of investigation into the grievance is in the discretion of the officers who conduct it. *Torres*, 246 F. Supp. 2d at 342.  Thus, even if defendant Bell failed to properly investigate plaintiff's grievance, any due process claim relating to that investigation could be subject to dismissal.  However, as stated above, the defendants have not moved to dismiss this claim against defendant Bell, and this court will not recommend dismissal of the claim at this time.

7.   **Damages**

Defendants argue that plaintiff cannot obtain monetary damages from them in their official capacities.  Defendants are correct in this assertion.  It is now well-settled that the state itself cannot be sued under section 1983. *Komlosi v. New York State OMRDD*, 64 F.3d 810, 815 (2d Cir. 1995)(citing *Will v. Michigan Department of*

*Police*, 491 U.S. 58, 71 (1989)).  This is true whether the court is considering Eleventh Amendment immunity or a statutory interpretation of section 1983. *Id.* at 815 n.3.

An action against state officers in their ***official*** capacities is tantamount to an action against the state.  *Yorktown Medical Laboratory v. Perales*, 984 F.2d 84, 87 (2d Cir. 1991).  Thus, to the extent that plaintiff's complaint may be read to allege claims for damages against defendants in their ***official*** capacities, those claims may be dismissed.

Defendants also argue that plaintiff's claim for compensatory damages is barred by the Prison Litigation Reform Act. 42 U.S.C. § 1997e(e).  This section provides that no federal civil action may be brought by a prison inmate for mental or emotional injury suffered while in custody in the absence of physical injury. *Id.*  Plaintiff in this case has not alleged any physical injury as the result of defendants alleged actions, mainly because he is claiming constitutional violations that would not necessarily result in "physical injury" such as Sixth, First, or Fourteenth Amendment claims.

However, it has also been held that the fact that compensatory damages are not available does not bar a plaintiff's claim for punitive damages, nominal damages, or injunctive or declaratory relief if he should succeed in proving a constitutional violation. *See Thompson v. Carter*, 284 F.3d 411, 416-18 (2d Cir. 2002).  Plaintiff in this case is seeking injunctive and declaratory relief as well as damages.  Thus, although plaintiff may be prevented from recovering compensatory damages absent actual injury, his claims for the other types of relief requested may continue.

**8.    Eighth Amendment**

Plaintiff is generally claiming violations of his Sixth (access to courts); First (retaliation); and Fourteenth (due process) Amendment rights.  The court notes, however, that in the section of plaintiff's complaint entitled "Legal Claims," every cause of action contains a statement that defendants have violated plaintiff's "Eighth Amendment" rights in addition to the constitutional rights he claims have been violated.

In order to show that prison conditions violated the Eighth Amendment, an inmate must show "extreme deprivations" because "routine discomfort" is part of the penalty that an inmate pays for his offenses against society. *Sims v. Artuz*, 230 F.3d 14, 21 (2d Cir. 2000)(citations omitted).  Plaintiff must establish a serious deprivation of a "basic human need." *See Williams v. Goord*, 142 F. Supp. 2d 416, 425 (S.D.N.Y. 2001)(citations omitted). Plaintiff in this case seems to be claiming that due to the defendants' actions, plaintiff suffered cruel and unusual punishment in addition to the other constitutional violations plaintiff has listed.

While plaintiff's claims may implicate the First, Sixth, and Fourteenth Amendments, his claims do not implicate the Eighth Amendment. *See Lunney v. Brureton*, 04 Civ. 2438, 2005 U.S. Dist. LEXIS 770, *25-29 (S.D.N.Y. Jan. 21, 2005) (claims that may implicate access to courts do not generally implicate the Eighth Amendment), *recommendation adopted by* 2005 U.S. Dist. LEXIS 2822 (S.D.N.Y. Feb. 23, 2005).  Plaintiff in this case has not alleged that he was denied the minimal measure of life's necessities to implicate the Eighth Amendment in any of his claims.

23

Thus, any claim based upon the Eighth Amendment may be dismissed.

**9.    Dismissal**

This court has found that many of plaintiff's allegations do not state a claim. Defendants made only a motion for partial dismissal, conceding that the claims regarding the two August 2004 disciplinary proceedings may proceed at this time. The court agrees that all claims may be dismissed on the pleadings *except* the claims relating to the August 2004 disciplinary hearings against defendants Perrea, Bell, Ano, Uhler, and Ransom.

The Second Circuit has held, however, that when the court dismisses a pro se action on the pleadings, the plaintiff should be given an opportunity to amend his complaint to state a claim. *See Frasier v. General Electric Co.*, 930 F.2d 1004, 1007 (2d Cir. 1991)(citations omitted)(court should not dismiss without granting leave to amend at least once when the complaint gives "any indication" that a valid claim may be stated).  Thus, although this court is recommending dismissal of many of the claims in plaintiff's complaint, that dismissal should be without prejudice.

**WHEREFORE,** based on the findings above, it is

**RECOMMENDED**, that the defendants' motion for partial dismissal (Dkt. No. 25) be **GRANTED**, and the complaint **DISMISSED IN ITS ENTIRETY** as to defendants **KISSANE, CHAMPAGNE**, **JARVIS, LACLAIR, LUCIA, WILT, and DUQUETTE**, and it is further

**RECOMMENDED,** that defendants' motion for partial dismissal (Dkt. No. 25) be **GRANTED**, and the complaint be **DISMISSED** as to defendant **BELL** *only* as to the April 2000 due process claim, and it is

**RECOMMENDED**, that defendants' motion for partial dismissal (Dkt. No. 25) be **GRANTED**, and the complaint dismissed as against defendant **ANO**, *only* to the extent that it alleges retaliation by defendant Ano (Compl. ¶¶ 73, 75), and it is

**RECOMMENDED**, defendants' motion for partial dismissal (Dkt. No. 25) be **GRANTED**, and the complaint be **DISMISSED** to the extent that it requests damages in the remaining defendants' official capacities, and it is further

**RECOMMENDED**, that the complaint be **DISMISSED** insofar as it raises Eighth Amendment claims.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993)(citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: August 29, 2006

Hon. Gustave J. DiBianco
U.S. Magistrate Judge